1  Holly S. Burgess (SBN 104757)
   LAW OFFICES OF HOLLY S. BURGESS
2  680 Auburn Folsom Road, Suite 109
   Auburn, CA  95661
3  Telephone:  (530) 889-8900
   Facsimile:  (530) 889-8988
4  hollyburgess@lohsb.com

5

6  Attorney for Plaintiff
   GENNADY SHAPIRO

7

8              **THE UNITED STATES DISTRICT COURT**

9              **THE EASTERN DISTRICT OF CALIFORNIA**

10                    **SACRAMENTO DIVISION**

11 | GENNADY SHAPIRO,                              | ) **CASE NO:  2:11-cv-00576-JAM-CMK**
12 |                                               | )
   |                  Plaintiff,                   | ) **SECOND AMENDED COMPLAINT**
13 |        vs.                                    | ) **FOR:**
   |                                               | )
14 |                                               | ) 1. VIOLATION OF TRUTH IN LENDING
   |                                               | ) ACT ("TILA")
15 | BANK OF AMERICA, N.A.;                        | ) 2. VIOLATION OF 15 U.S.C. §1635;
   | PRLAP, INC.; RECONTRUST COMPANY,              | ) 3. VIOLATION OF 12 CODE OF
16 | N.A.; BAC HOME LOANS SERVICING, LP;           | ) FEDERAL REGULATIONS §226;
   | and DOES 1-20, inclusive,                     | ) 4. VIOLATION OF FAIR DEBT
17 |                                               | ) COLLECTION PRACTICES ACT
   |                  Defendants.                  | ) ("FDCPA") 15 U.S.C. §1692;
18 |                                               | ) 5. VIOLATION OF REAL ESTATE
   |                                               | ) SETTLEMENT PROCEDURES ACT;
19 |                                               | ) 6. SLANDER OF TITLE/QUIET TITLE;
   |                                               | ) 7. FRAUD;
20 |                                               | ) 8. WRONGFUL FORECLOSURE.
   |                                               | )
21 |                                               | ) **PLAINTIFF DEMANDS A JURY**
   |                                               | ) **TRIAL**
22 |                                               | )
   |                                               | )
23 |                                               | )
   |                                               | )
24 |_____| )

25

26                          **PARTIES**

27 1.      Plaintiff is GENNADY SHAPIRO ("Plaintiff" or "SHAPIRO") an individual who is the

28 owner of 8120 Lone Pine Place, Granite Bay, California 95746, APN: 035-031-012 ("the Subject

Property"). The legal description of the Subject Property is attached hereto and incorporated herein as **Exhibit "A"**.

2.      Defendant BANK OF AMERICA, N.A., a national association, whose corporate headquarters is in North Carolina, whose address is P.O. Box 9000, Getzville, New York 14068-9000, was at all times mentioned herein, engaged in business as a bank and/or servicer of mortgage loans in the county of Placer, California.

3.      Defendant RECONTRUST COMPANY, N.A. ("Recontrust"), a wholly-owned subsidiary of Bank of America, N.A., on information and belief and at all times mentioned in this Complaint was engaged in the business of title insurance, banking services, including foreclosure, and acting as trustee for banks, mortgage holders and lien holders in the county of Placer, California.

4.      Defendant PRLAP, INC. ("PRLAP"), on information and belief, at all times mentioned in this Complaint was engaged in the business of title insurance, banking services, including foreclosure, and acting as trustee for banks, mortgage holders and lien holders in the county of Placer, California.

5.      Defendant BAC HOME LOANS SERVICING, LP ("BAC HOME LOANS"), a subsidiary of Bank of America, N.A, was at all times mentioned herein engaged in business as a bank and/or servicer of mortgage loans in the county of Placer, California.

6.      Defendants Doe 1 through Doe 10 are believed to be the current beneficiaries of the Deed of Trust, if the lien has not been extinguished by operation of law.

7.      Plaintiff does not know the true names, capacities, or basis for liability of Defendants sued as Doe 1 through Doe 10, i.e., the Beneficiaries. Each fictitiously named Defendant is in some manner liable to Plaintiffs, claims some right, title, or interest in the Subject Property, or both.

8.      Plaintiff does not know the true names, capacities, or basis of liability of Defendants sued as Doe 11 through Doe 20. Each fictitiously named Defendant is in some manner liable to Plaintiffs,

1    claims some right, title, or interest in the Subject Property, or both.

2    9.      At all times relevant to this Complaint, each of the Defendants was the agent or employee of

3    each of the remaining Defendants, and was acting within the course and scope of such agency or

4    employment.

## JURISDICTION

10.     Pursuant to 28 U.S.C.A. §1331, this court has original jurisdiction based on the laws of the

United States, as alleged herein.

11.     Pursuant to 28 U.S.C. §1367(a), this court has supplemental jurisdiction over the related state

court claims.

12.     Pursuant to 28 U.S.C. §1332, this court has jurisdiction over the citizens of the various states

as alleged above, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

## FACTS COMMON TO ALL ALLEGATIONS

13.     On or about July 19, 2005, Plaintiff executed an Adjustable Rate Note and a deed of trust with

the Lender Bank of America ("B of A")[1]  The note was for $1,500,000.      The Defendant determined

that the adjustable terms of the Note were to be based upon an "Index" of an "average of interbank

offered rates for one year denominate deposits in the London market ("LIBOR"), as published in the

*Wall Street Journal*.  The most recent index figure available as of the date 45 days before each

Interest Rate Change Date is called the "Current Index"."[2]

14.     The margin of the Lender calculates new interest rates by adding not greater than "10.375% or

2.250% to the Current Index.    Paragraph 4(D) of the Note states "My interest rate will never be

greater than 110.375%. [3]

15.     Plaintiffs' loan was immediately sold and securitized after closing by Lender B of A, and

[1] Exhibit B, Second Amended Complaint, (all references to exhibits are exhibits to the Second Amended Complaint)
[2] Exhibit B, page 1 of 3 (B), SHAP 000014
[3] Exhibit B, page 2 of 3 (D), SHAP 000015

1  placed into a Pooling and Servicing Agreement and converted into a stock of a Pass Through Vehicle.

2  On information and belief, the mortgage title was never officially transferred to the trust and as a

3  result, the note was put out of eligibility for the trust under New York law.

4  16.      There is no evidence that B of A endorsed the Note to anyone or that the DOT was properly

5

6  assigned to the now purported holder-in-due-course BAC Home Loans Servicing, LP ("BAC")  or

7  Recontrust Company, N.A. ("Recontrust").      If such assignment did occur, Plaintiff was never

8  notified of it pursuant to federal RESPA law.   The alleged loan was nevertheless registered on the

9  SEC as a Real Estate Mortgage Investment Conduit (REMIC) Trust and became a Special Purpose

10  Vehicle (SPV) for the purpose of tax exemption.  BANK OF AMERICA does not deny the note and

11  deed of trust were conveyed to this REMIC.

12  17.      REMICs are investment vehicles that hold commercial and residential mortgages in trust and

13

14  issues securities representing an undivided interest in these mortgages.

15  On information and belief, Defendant B of A or BAC were appointed as the master servicer of the

16  REMIC.    Normally, the Trustee of a Trust has the power and responsibility to administer the assets

17  of the Trust but in the case of a REMIC no such power exists.

18  18.      Once the REMIC containing Plaintiffs' loan was formed, the loan was converted into a

19  security owned by thousands of shareholders throughout the world and was traced on Wall Street.

20  At that point, the state of Plaintiffs' loan changed and was converted forevermore into a stock.

21  Once Plaintiffs' loan was securitized and converted, it forever lost its security.

22  19.      Since the loan was sold and securitized into stock, the lender can no longer claim that it is a

23  real party in interest, or even that the loan still exists as a loan, since double dipping is a form of

24  securities fraud.      A negotiable instrument can only be in one of two states after undergoing

25  securitization, not both at the same time. It can either be a loan or a stock.   Once the instrument is

26  traded as a stock, it is forever a stock and therefore regulated, as this loan was, by the SEC as a

27  stock.

28  20.      The subject DOT states that the DOT secures the Promissory Note.   The Promissory Note,

by conversion into stock, was extinguished as a collateralized asset and therefore the Trust secures absolutely nothing and BAC and/or Recontrust, not being the real party in interest, has no standing to foreclose on Plaintiffs.   Since the Lender sold the loan to a REMIC, it forever lost the ability to enforce, control or otherwise foreclose on Plaintiff's property, including the right to assign the Mortgage or endorse the Note. It was no longer the real party of interest.

21.     If B of A and/or BAC owned the Note, it would have to be taxed on the interest earned from the Note.  If the REMIC owned the Note, it would have a tax liability.  To avoid double taxation, under Internal Revenue Code 860, the loan was put into a SPV so that only the shareholders are taxed and therefore are the real parties in interest.   Because of IRS Code 860,  BAC/Recontrust is not the real and beneficial party in interest because the REMIC does not own the Note, the shareholders do.

22.     By distributing the tax liabilities to the shareholders, the REMIC has also distributed the parties in interest.   Since a Promissory Note is only enforceable in its whole entirety and thousands of shareholders own the subject Note, no one of them can foreclose on Plaintiffs' home.

The asset of the REMIC was registered and traded as a part of a security and as much cannot be traded out and is permanently attached and converted into stock preventing the Note from being assigned and securitized again and again which would create securities fraud.

23.     Since Plaintiffs' loan went into default, it was written off by the REMIC and received tax credits from the IRS, was therefore discharged, and settled destroying the Note forever.   After securitization, the Note cannot be reattached to the Mortgage through adhesion.

24.     Under the UCC, the Promissory Note is a one-of-a-kind instrument and any assignment must be as a permanent fixture onto the original Note much like a check.   There is no endorsement on the original Note.   The original Promissory Note has the only legally binding chain of title, otherwise the instrument is faulty.  All defendants lack standing to enforce the Note.

25.     Under the terms of a typical Pooling and Servicing Agreement of the REMIC trust,  the servicer can buy back the Note as a non-performing non-secured debt like collection agencies that buy non-performing credit card debts. This purchase is of a discharged asset and cannot be re-adhered to the original Mortgage, since the original Note was a one-of-a-kind instrument, not part of

1   the discharged asset.  Therefore the purchaser of the discharged asset can never be the holder-in-

2   due-course of the original Note.

3   26.    Under the UCC, the original Promissory Note is the only valid and legally binding chain of

4   title for the Note.

5   27.    The numerous attempts by Defendants B of A and/or BAC and/or Recontrust to claim

6   ownership of the original Note by the purchaser of the discharged asset is fraudulent and is

7   characterized as "reverse engineering."  There is no perfection of title.

8   Plaintiffs' Note was unduly confusing and written in such a manner as to confuse Plaintiffs and for

9   the purpose of drawing Plaintiffs into a default.

10   28.    On or about February 7, 2011, April 20, 2011, Recontrust and BAC wrongfully recorded a

11   Notice of Trustee Sale for the subject property.

12   29.    The Deed of Trust states that only the Lender can invoke the power of sale, or the trustee

13   once asked to by the beneficiary of the deed of trust.

14   30.    No evidence exists to support the claim that BAC is the holder in due course of the Note at

15   issue in this action.  Plaintiffs' DOT was flawed from the date of origination of the loan, because it

16   was securitized and no conveyance to the REMIC was properly recorded,  all of which was done for

17   the purposes of deception, fraud , confusing- and therefore harming – the Plaintiffs, and theft of

18   revenue from the local county government through the illegal avoidance of mortgage recording fees.

19   31.    Neither BAC or Recontrust is the original lender for the Plaintiffs' subject Mortgage or Note

20   herein.

21   32.    At the time Plaintiffs' signed the Note and Mortgage, they were unknowingly converting

22   their property into an asset of a mortgage-backed security trust ("MBTS") and were deliberately

23   induced into signing a Negotiable Instrument, which was never intended as such, but was intended

24   as collateral for a Mortgage backed security.

25   33.    The alleged Note in question started its life as a negotiable instrument, similar to a check.

26   The negotiation and enforceability of the Note is governed by Article Three (3) of the Uniform

27   Commercial Code.

28   34.    The note that had been executed with the DOT became part of a pool of mortgages losing its

1   individual identity as a note between a lender and a borrower; it merged with other unknown notes

2   as a total obligation due to the investor or investors; it is no longer a negotiable instrument, rather,

3   collateral for a federally regulated Security under the confines of the SEC.

4   35.    The proper parties to this action would be the investors of the mortgage-backed securities to

5   which Plaintiffs' loan was securitized; but these parties have no recorded interest in the Mortgage,

6   which Plaintiffs believe were never delivered to the Trust for the mortgage backed security pool;

7   therefore, the note itself is, at best, unsecured rights to payment, with no right of **NON-JUDICIAL**

8   **SALE.**

9   36.    All of the Defendants knew that Plaintiffs' loan was securitized or intended to be securitized

10   prior to the preparation of the note and mortgage reflecting the loan.

11   37.    All of the purported Assignments and transfers were done by the Defendants without the

12   required corporate resolution giving authority for that person to conduct such assignments and

13   transfers.

14   38.    A "debt collector" under the statute is "any person who uses any instrumentality of interstate

15   commerce or the mails in any business the principal purpose of which is the collection of any debts,

16   or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted

17   to be owed or due another." 15 U.S.C. §1692a(6). Plaintiff has been damaged as alleged below.

18

19   **FIRST CAUSE OF ACTION**<br>**VIOLATION OF TRUTH AND LENDING ACT ("TILA")**

20   39. Plaintiff re-alleges and affirms each paragraph 1 through 38 above, of this Complaint and

21   incorporates such as if alleged fully herein.

22   40. Pursuant to 15 USC §1605 and Regulation Z, 12 CFR §226.4, incident to the extension of

23   credit, Defendant had a duty to disclose those finance charges shown on the TILA statement and that

24

25   information, such as the identity of the creditor, each amount that is or will be paid to third persons by

26   the creditor on the consumer's behalf, together with an identification of or refere3nce to the third

27   person; that the loan exceeded fair market value of the Subject Property with, a clear and conspicuous

28   statement tat – (A) the interest on the portion of the credit extension that is greater than the fair

market value of the dwelling is not tax deductible for Federal income tax purposes; and (B) the consumer should consult a tax adviser for further information regarding the deductibility of interest and charges." Specifically, TILA requires the lender to disclose: A statement of conditions under which a creditor may take certain actions, as described in Section 226.5b(d)(4)(i); The payment information described in Section 226.5b(d)(5)(i) and (ii) for both the draw period and any repayment period; A Statement that negative amortization may occur, as described in Section 226.5b(d)(9); A statement of any transaction requirements, as described in Section 226.5(d)(10); A statement regarding tax implications, as described in Section 226.5(d)(11); A statement that the APR imposed under the plan does not include costs other than interest, as described in Sections 226.5(d)(^) and (d)(12)(ii); and the variable rate disclosures described in Sections 226.5b(d)-(12)(viii), (x), (xi), and (xii) as well as disclosures described in Section 226.5b(d)(5)(iii), unless these disclosures were provided at time of application in a form that consumer could keep and included a representative payment example for category of payment option consumer chose. (12 CFR 226.6).

41.  Defendant and/or its agents breached this duty by failing to include and disclose: A statement of conditions under which a creditor may take certain actions, as described in Section 226.5b(d)(4)(i); The payment information described in Section 226.5b(d)(5)(i) and (ii) for both the draw period and any repayment period; A Statement that negative amortization may occur, as described in Section 226.5b(d)(9); A statement of any transaction requirements, as described in Section 226.5(d)(10); A statement regarding tax implications, as described in Section 226.5(d)(11); A statement that the APR imposed under the plan does not include costs other than interest, as described in Sections 226.5(d)(6) and (d)(12)(ii); and the variable rate disclosures described in Sections 226.5b(d)-(12)(viii), (x), (xi), and (xii) as well as disclosures described in Section 226.5b(d)(5)(iii).

42.  Such failure resulted in an improper disclosure of finance charges in violation of 15 U.S.C. §1601, et seq., 12 CFR §226.18(d) (Regulation Z).  Such undisclosed charges included some

1    identified on the settlement statement listing the amount financed which is different from the sum

2    listed in the original note. Other required information Defendant failed to disclose included the

3    identity of the actual creditor,; each amount that is or will be paid to third persons; that the loan

4    exceeded the fair market value of the Subject Property and a "clear and conspicuous statement that –

5
     (A) the interest on the portion of the credit extension that is greater than the fair market value of the

6
     dwelling is not tax deductible for Federal income tax purposes; and (B) the consumer should consult

7
8    a tax adviser for further information regarding the deductibility of interest and charges."

9      43.  Despite Plaintiff's providing Defendant and/or agents with his full financial information,

10   including his tax returns and/or IRS for 4506-T, bank account statements, and accurate facts, the

11   Defendant and/or its agents did not disclose to Plaintiff that it falsified his loan applications.

12     44.  Plaintiff relied on Defendant's and/or its agents documents and assurances as being truthful,

13
     accurate, and providing full disclosure in meeting Plaintiff's due diligence requirement.

14
15     45.  On or about July 19, 2005, Plaintiff signed the DOT and NOTE against the Subject Property

16   in the amount of $1,500,000.  The DOT identified Bank of America, N.A., PRLAP, Inc. as the

17   "Trustee."  Plaintiff applied for a "30-year fixed conventional" loan and was told he was signing

18   documents for such a loan.  However, he later learned that he had received an "interest-only loan."

19
     Further, the Defendant and/or its agents did not disclose to him the effect of the interest-only  loan on

20
     his APR, finance charges, amount financed, total payments, payment schedule, and right to cancel.

21
22     46.  In addition, the Defendant and/or its agents did not disclose the actual lender was not Bank of

23   America as named on his Note and Deed, or the true identities of the beneficiaries entitled to his

24   mortgage payments and with whom he could negotiate a re-write of his home loan. Defendant and/or

25   its agents also did not disclose that a portion of Plaintiff's mortgage payment was used to purchase

26   default insurance.

27

28

47. Because of Defendants and/or its agents breach, Plaintiff relied to his detriment on Defendant and/or its agent's documents and assurances, which resulted in (a) his not getting the "3- year fixed conventional loan" for which he had applied; (b) not knowing the true Lender to contact to have his loan re-written to conform to a "3- year fixed conventional" loan; (c) his obtaining a loan that he never would have accepted if he knew the true facts; (d) his inevitable default on the loan and the catastrophic effect on his credit; (e) numerous attempts to wrongfully evict him from his home; (f) having his home foreclosed and sold even though his mortgage payments were current as a result of the default insurance that he had unknowingly purchased; (g) fraudulent information attached to his name and credit; and (h) a toll on his personal well-being.

48. Under 12 C.F.R. §226.15 and 15 U.S.C.A. § 1635, Plaintiff has a right to rescind the security interest in his home, the Subject Property, within three years from the date of consummation of the transaction.

49. Under the statute, once Plaintiff is entitled to rescind the loan transaction and the security interest in the subject property becomes void, and plaintiff was no longer liable for any amounts, including any finance charge.

50. Defendants and/or its agent's failure to provide the required disclosures provides Plaintiff with the right to rescind the transaction, and Plaintiff, through this public Complaint, which is intended to be construed, for purposes of this claim, as a formal notice of rescission, hereby elects to rescind the transaction.

**Tolling**

51. Plaintiff inspected his documents in 2005, but Plaintiff could not have learned of these violations at the time the loan was obtained by looking at his loan document and escrow closing

1   statements as the true facts of the lender and the securitization of their note and deed of trust and the

2   fees attached thereto, which was undisclosed to him, are not apparent from the face of the loan

3   documents, nor DOT.

4   52.  Plaintiff first learned of the actions of Defendants, including their failure to disclose and the

5
    fraud committed up0on him in November of 2010.  Any applicable statute of limitations should run
6
7   from this date.

8   53.  Due diligence by Plaintiff can be implied from Plaintiff's reliance on statements made by

9   those in a fiduciary capacity.  Upon reliance on the statements of Defendant, Plaintiff exercised due

10  diligence.

11  54.  Despite said due diligence, Plaintiff was unable to obtain vital information bearing on the
12
    existence of a claim against these Defendants.
13
14  55.  Another similarly situated and reasonable Plaintiff would not have known the existence of a

15  possible claim against Defendants within the limitations period, therefore equitable tolling should

16  serve to extend the statute of limitations for filing suit until plaintiff can gather further information.

17  **Tender**

18  56.  Tender is not required when Plaintiff seeks to rescind a loan under TILA[4].

19  57.  Failing to tender does not require that the court dismiss a case alleging a TILA violation.
20

21

22                                     **SECOND CAUSE OF ACTION**
23                         **VIOLATION PURSUANT TO 15 U.S.C. §1635**

24  58.  Plaintiff re-alleges and affirms each paragraph 1 through 57 above, of this Complaint and

25  incorporates such as if alleged fully herein.

26
    ---
    [4] In *Yamomoto v. Bank of New York*, the Ninth Circuit explained that a court may (emphaisis added) alter the rescission
27  procedures described in TILA and retains discretion to condition recision on tender byu the borrower of the property he
    had received from the lender. 329 F.3d 1167, 1171 (9th Cir. 2003). *Yamamoto* did not hold that a court must, as a matter
28  of law, dismiss a case if the ability to tender is not pleaded. (*ING Bank v. Ahn*, No. C09-00995, THE, 2009, WL
    2083965).

59. The present case credit transaction is governed by the disclosure requirements of Title 15 USC 1635.

60. The UCC 1 lien applies to the transaction under revised Article 9 and to Defendants, because lien rights on the property arose in favor of Defendants as a result of the transaction. Defendants failed and/or refused to meet the disclosure requirements of Revised Article 9 of the UCC, by not providing the notice required or filing it before, during, or immediately after the settlement, as mandated under the Article.

61. Plaintiff is specifically in the class of persons this statute was designed to protect.

62. As a direct, proximate, and foreseeable result of Defendants' failure to provide proper notices, Defendants are subject to loss of property and loss of use of property and other damages as a result of Defendants' failure.

### THIRD CAUSE OF ACTION
### VIOLATION OF TITLE 12 CODE OF
### FEDERAL REGULATIONS §226

63. Plaintiff re-alleges and affirms each paragraphs 1 through 62 above, of this Complaint and incorporates such as if alleged fully herein.

64. Since this action was commenced, Defendants have continued and so continue to violate the Consumer Credit Protection Act, Title 15 United States Code, §1601, et seq. and Regulation Z, Title 12 Code of Federal Regulations, Part 226, which was adopted pursuant to such Act, by failing to properly make the disclosures required by the Act and Regulation Z, hereinafter more particularly set forth.

65. The Federal Reserve Board Interpretation, Title 12 Code of Federal Regulations Part 226, Supplement I, Paragraph 23(a)(1) provides that in the present case the transaction is rescindable for reasons above and below stated.

66. Defendants failed to disclose since the consumer credit transaction was not presented in the manner required by law.

67. Defendants failed to disclose in or with the disclosure statements, because no disclosure statements were given, nor were any alleged disclosures grouped together or segregated from everything else as required by Title 12 Code of Federal Regulations, Section 226.17(a)(1).

68. Defendants failed to disclose in or with the disclosure statements, because no disclosure statements were given, the amount of the balance to which the rate was applied and an explanation of how that balance was determined.

69. Defendants failed to disclose the fact that the balance is determined without first deducting all credits and payments made and payments as required by Title 12 Code of Federal Regulations, §226.4.

70. Defendants failed to disclose in or with the disclosure statements, because no disclosure statements were given, the amount of the balance to which the rate was applied and an explanation of how that balance was determined and further failed to disclose the fact that the balance is determined without first deducting all credits and payments made and payments as required by Title 12 Code of Federal Regulations, §226.4.

71. Defendants failed to disclose in or with the acceleration statements, the amounts, itemized and identified by type, of charges other than finance charges debited to the account during the acceleration period as required by Title 12 Code of Federal Regulations, §226.21.

72. The right to rescind or cancel settlement documents was unsigned by both parties, and was not disclosed or given, as required by title 12 Code of Federal Regulation, Section 226.18, et seq.

73. There was no separate form to cancel, as required by Title 12, Code of Federal Regulations, §226.

74. The interest disclosures were not given together with the other information witin the documents.

75. Plaintiffs, as required by 12 Code of Federal Regulation, §226.18(c) and 12 U.S.C. 2601, et seq. received no good faith estimate copy.

76. A statement that the consumer should refer to the appropriate contract document and clause for information about nonpayment, default and the right to accelerate was not given, as required by Title 12 Code of Federal Regulation, Section 226.18(p).

77. Plaintiff is specifically in the class of persons this statute was designed to protect.

78. a direct, proximate, and foreseeable result of Defendants' failure to provide proper notice/disclosure, Defendants are subject to loss of property and loss of use of property and other damages as a result of Defendants' failure.

**FOURTH CAUSE OF ACTION**
**VIOLATIONS OF THE FAIR DEBT COLLECTIONS PRACTICES ACT**
**("FDCPA") 15 USC §1692**

79. Plaintiff re-alleges and affirms each paragraph 1 through 78 above, of this Complaint and incorporates such as if alleged fully herein.

80. Defendants misrepresented the character and legal status of the unlawful debt in violation of 15 USC 1692(e)(2), by sending false correspondence to Plaintiff and third persons and assisting in the filing of an unlawful foreclosure actions that they could not legally take without the ruse and falsities committed upon the Plaintiff in violation of 15 USC 1692(e) by sending false correspondence to Plaintiff and third persons and assisting in the filing of an unlawful foreclosure action in county court.

81. Defendants threatened to take and did take actions that they could not legally take without the ruse and falsities committed upon the Plaintiff in violation of 15 USC 1692(e)(5).

82. Defendants engaged in conduct that disgraced the Plaintiff in violation of 15 USC 1692(e)(7) by sending false correspondence to Plaintiff and third persons and assisting in the filing of an unlawful foreclosure action in county court.

83. Although Plaintiff disputed the alleged debt, Defendants communicated false credit information to others and failed to communicate that the debt was disputed, when it was disputed, in violation of 15 USC 1692(e) (8).

84. Defendants stated numerous times that they were the lawful owners in interest of the debt or empowered to speak on behalf of the owner to interest, yet knew or should have known that they were not, and as such violated 15 USC 1692(e)(5).

85. All Defendants engaged in unfair and deceptive means and attempts to collect the alleged debt in violation of 15 USC 1692 (f).

86. Defendants attempted to collect the alleged debt in a manner and amount not authorized by the original MORTGAGE and Note in violation of 15 USC 1692(f) (l).

87. Defendants threatened to unlawfully repossess the Plaintiff's property in violation of 15 USC 1692(f) (8).

88. Plaintiff suffered actual damages from these violations.

89. Pursuant to 15 USC 1692(k), Plaintiff is entitled to actual damages, statutory damages as set forth herein, and reasonable attorney fees and costs.

90. Because the conduct of the Defendants was frequent and persistent and because the nature of the violations of the FDCPA were so egregious and because the FDCPA violations were part of a deliberate scheme, Plaintiff is entitled to the maximum possible relief permitted under 15 USC 1692k(a).

## FIFTH CAUSE OF ACTION
### VIOLATIONS OF RESPA 12U.S.C. 2601 ET SEQ.

91. Plaintiff re-alleges and affirms each paragraph 1 through 90 above of this Complaint and incorporates such as if alleged fully herein.

92. Defendants failed to timely inform Plaintiff of any alleged Appointments, Assignments and transfers if the mortgage in violation RESPA.

95. Defendants failed to timely notify Plaintiff of any charge of servicers.

96. Plaintiff has previously made written demands to Defendants to show evidence of standing to claim a debt and Defendants have refused to evidence such standing.

1    97.    Defendant is subject to the provisions of the real estate settlement procedures act ('RESPA"),

2    12 USC §2601 et. Seq., particulary §2605 regarding (a) Disclosure to applicant relating to

3    assignment, sale, or transfer of loan servicing and §2607 regarding prohibition against kickbacks and

4    unearned fees.

5    98.    In violation of 12 USC §§2605 and 2607 in connection with the mortgage loan to Plaintiffs,

6    Defendant and/or its agents excepted charges for the rendering of real estate services which were in

7    fact charges for other than services actually performed, interest only adjustable rate mortgage, which

8    in fact was used to purchase securities and the attendant fees provided for in the MBST Master Sales

9    and Servicing Agreement.

10   99.    Under 12 U.S.C.A. §2605 a servicer has a duty to respond to borrower inquiries.  When a

11   servicer receives a Qualified Written Request ("QWR") the servicer has a duty to provide a written

12   response acknowledging receipt of the correspondence within 20 days.

13   100.    The servicer also has a duty not later than 60 days after conducting an investigation to

14   provide the borrower with a written explanation or clarification that includes –

15        (i)    to the extent applicable, a statement of the reasons for which the servicer believes the
         account of the borrower is correct as determined by the servicer; and
16

17        (ii)    after conducting an investigation, provide the borrower with a written explanation or
         clarification that includes –
18

19             (a) Information requested by the borrower or an explanation of why the information
                 requested is unavailable or cannot be obtained by the servicer; and

20
             (b) The name and telephone number of an individual employed by, or the office or
21               department of, the servicer who can provide assistance to the borrower.

22   101.    Here, the Servicer breached that duty.  As a result of the Defendants' violations of RESPA,

23   Defendants are liable to Plaintiffs in an amount equal to three (3) times the amount of charges paid

24   by Plaintiffs for "settlement services" pursuant to 12 USC §2607(d)(2).  The Servicer of MBST is

25   making money off of Plaintiff's predatory loan, in violation of RESPA, all to their damage

26   according to proof.

27
28   102.    Plaintiff first learned of the actions of Defendants, including their failure to disclose and the

fraud committed upon him in November of 2010. Any applicable statute of limitations should run from this date. Plaintiff could not have learned of these violations at the time the loan was obtained by looking at his loan documents and escrow closing statements as the true facts of the lender and the securitization of their note and deed of trust and the fees attached thereto, which was undisclosed to him are not apparent from the fact of the loan documents, nor deed of trust.

**Tolling**

103. Plaintiff inspected his documents in 2005, but Plaintiff could not have learned of these violations at the time the loan was obtained by looking at his loan documents and escrow closing statements as the true facts of the lender and the securitization of their note and deed of trust and the fees attached thereto, which was undisclosed to him are not apparent from the face of the loan documents, nor deed of trust.

104. Plaintiff first learned of the actions of Defendants, including their failure to disclose and the fraud committed upon him in November of 2010. Any applicable statute of limitations should run from this date.

105. Due diligence by Plaintiff can be implied from Plaintiff's reliance on statements made by those in a fiduciary capacity. Upon reliance on the statements of Defendant, Plaintiff exercised due diligence.

106. Another similarly situated and reasonable Plaintiff would not have known the existence of a possible claim against Defendants within the limitations period, therefore equitable tolling should serve to extend the statute of limitations for filing suit until Plaintiff can gather further information. (*Holmberg v. Armbrecht,* 327 U.S. 392, 297 (1946), *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 268 (7th Cir. 1995).

### SIXTH CAUSE OF ACTION
### FRAUD

107. Plaintiff re-alleges and affirms each paragraph 1 through 106 above of this Complaint and

1   incorporates such as if alleged fully herein.

2   108. Defendant BANK OF AMERICA knowingly and intentionally concealed material information
3   from Plaintiff which is required by federal and state statutes and regulations to be disclosed to the
4   Plaintiff both before and after closing, namely that as soon as his loan was finalized, his note and
5   deed of trust would be conveyed to a MBS and that the lender, BANK OF AMERICA would be paid
6   in full.  Plaintiff was not told that part of his loan payments would be used to pay service fees to the
7   Servicer and to buy insurance and other credit enhancements to be used by the Servicer of the MBS.
8   These payments are currently being used to keep Plaintiff's note current.

9   109. Defendants, by their actions, participated in the scheme in the contracting to provide mortgage
10   loan services and a loan program to Plaintiff [which was not only to be best suited to the Plaintiffs]
11   given his income and expenses, but by which Plaintiff would also be able to satisfy his obligations
12   without risk of losing his home, were "fiduciaries" in which Plaintiff reposed trust and confidence,
13   especially given that Plaintiff was not and is not an investment       banker,       securities       dealer,
14   mortgage lender or mortgage broker.  Plaintiff was defrauded and duped into a loan and an
15   obligation that he could not afford.  Plaintiff will lose all that he has put into the Subject Property,
16   while Defendants will lose nothing and in fact make money off of the MBS and the subsequent
17   impending sale of Plaintiff's home and then insurance claim to the federal government for the
18   deficiency.  Plaintiff promised to pay and his good credit was stolen from him; These were then used
19   in the MBS investment scheme and a higher mortgage and mortgage rate were charged to him, and
20   the increased "fees" all used for the enrichment of BANK OF AMERICA and/or RECONTRUST
21   and/or their agents and the other parties to the MBS.

22   110. Defendants breached their duty of care Plaintiff by fraudulently inducing Plaintiff to enter into
23   a mortgage transaction which was contrary to the Plaintiff's stated intentions; contrary to the
24   Plaintiff's interest; and contrary to the Plaintiff's preservation of his home.

25   111. Defendant BANK OF AMERICA and/or RECONTRUST and/or their agents, though they have
26   no right, title, or interest in Plaintiff's note and deed of trust, falsely filed documents with the Placer
27   County Recorder's Office claiming that Plaintiff had defaulted on the obligation, and falsely
28   invoked non-judicial foreclosure clause and the power of sale in the deed of trust, though there was

1   no proper substitution of trustee and an invalid and false "assignment of deed of trust" filed with the

2   County Recorder. No valid assignment agreement between the oblige on Plaintiff's note and the

3   current foreclosing entities has been field as required by California law.

4   112. Defendants fraudulently misrepresented its standing to foreclose on Plaintiff's note and deed of

5   trust to the State of California through the Recorder's Office and to the public, by falsely reported a

6   default on the loan and ruining Plaintiff's credit, with full knowledge that their representations were

7   false, fraudulent, and misrepresented the truth at the time said representations were made.

8   Plaintiff not being an investment banker, securities dealer, mortgage lender, or mortgage broker,

9   reasonably relied upon the fraudulent and false representations of the Defendants in agreeing to

10   execute the mortgage loan documents.

11

12   113. Had Plaintiff known of the falsity of Defendants' fraud and false representations, Plaintiff

13   would not have entered into the transaction the subject of this action.

14   114. As a direct and proximate cause of Defendants' fraud, material omissions and material

15   misrepresentations, Plaintiff has suffered damages, all according to proof at trial.

16   115. Under the totality of the circumstances, these fraudulent acts were malicious with the intent to

17   trick and harm Plaintiff. Defendants' actions were willful, wanton, intentional, and with a callous

18   and reckless disregard for the rights of Plaintiff, justifying an award of not only actual compensatory

19   damages, but also exemplary punitive damages to serve as a deterrent not only as a future conduct of

20   the named Defendants herein, but also to other persons or entities with similar inclination.

21

22   116. Plaintiff first learned of the actions of Defendants, including their failure to disclose and the

23   fraud committed upon him in November of 2010. Any applicable statute of limitations should run

24   from this date. Plaintiff could not have learned of these violations at the time the loan was obtained

25   by looking at his loan documents and escrow closing statements as the true facts of the lender and

26   the securitization of his note and deed of trust and the fees attached thereto, which was undisclosed

27

28   to him are not apparent from the face of the loan documents, nor deed of trust.

1

2

## SEVENTH CAUSE OF ACTION
## SLANDER OF TITLE/PETITION TO QUIET TITLE

3

1.    The subject property has been sufficiently described in "Exhibit A."

4

5

6

2.    The Defendants have knowingly and maliciously communicated, in writing, false statements that have effect of despairing the Plaintiff's title to property. The Plaintiff has incurred special damages as a result.

7

8

9

10

3.    Defendant's legally enforceable claim, interest to standing to sue as to the Note or mortgage in question and the claim is a cloud on the Defendants' title and should be quieted under Pennsylvania.

11

4.    Plaintiff is the rightful owner of the subject property.

12

5.    Plaintiff is the legal titleholder of this property.

13

14

15

16

17

6.    Defendants have established an adverse claim to Plaintiffs property by knowingly and unlawfully causing a cloud to be recorded against the title of the plaintiff's property and have caused to be sent, notices of default and foreclosures, and have served and filed mortgage documents that claim an interest in the property of the plaintiff.

18

19

20

21

7.    Any purported transfer of any interest in the Plaintiff's real estate was wrongful and invalid because the endorsements, assignments, foreclosures, or purported foreclosures were invalid and were not conducted in accordance with the laws of Pennsylvania.

22

23

8.    Defendants know or should have known that such transfers were wrongful and invalid and the publication of an ownership interest in the Plaintiff's property is, therefore false.

24

25

26

**WHEREFORE**, Plaintiff prays this court to enter judgment against Defendants and each of them, as follows:

27

28

1.    For an order compelling said Defendants, and each of them, to sell, to transfer or release legal title and any alleged encumbrances thereon, and possession of the subject property to

1  Plaintiffs herein;

2       2.     For a declaration and determination that Plaintiffs are the rightful holders of title to

3  the property and that Defendants herein, and each of them, be declared to have no estate, right, title

4  or interest in said property;

5       3.     For a judgment forever enjoining said Defendants, and each of them, from claiming

6

7  any estate, right, title or interest in the subject property;

8       4.     For a declaration that the foreclosure which was instituted be deemed and declared

9  illegal and void, and that further proceedings in connection with the foreclosure be enjoined;

10       5.     Determination of the title to Plaintiff SHAPIRO against all other adverse claims.

11       6.     For attorneys fees according to statutes;

12       7.     For actual, compensatory and punitive damages.

13

14       8.     For costs of the suit herein incurred;

15  For such other further relief as the court may deem just and proper

16  Dated: November 1, 2011          Respectfully submitted,

17                           LAW OFFICES OF HOLLY S. BURGESS

18                           By:  **/s/ HOLLY S. BURGESS**      .

19                               HOLLY S. BURGESS
                             Attorneys for Plaintiff, GENNADY SHAPIRO

20

21

22

23

24

25

26

27

28

1

# VERIFICATION

2

3      I, GENNADY SHAPIRO, declare as follows:

4      I have read the foregoing Verified Second Amended Complaint and except for

5 matters stated on information and belief, the facts stated therein are true on my own

6 knowledge, and as to those matters stated on information and belief, I believe them to be

7 true.

8      I declare under penalty of perjury under the laws of the United States that the

9 foregoing is true and correct and that this verification was executed on __/0-31-11,__

10 2011, at Auburn, Placer County, California.

11

12

13                                        GENNADY SHAPIRO

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28